UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ZEV HELLER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:12-CV-422 |
| | § | |
| ACE EUROPEAN GROUP LIMITED, *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | § | |

## <u>OMNIBUS OPINION AND ORDER</u>

Pending before the Court are no fewer than eight separate motions, with associated responses and replies, totaling seventeen separate briefs. To mix Herculean metaphors, faced with a hydra-headed docket,[1] the Court will choose the path of virtue[2] and clean out the Augean stables.[3]

First, the Court will address the three motions for summary judgment, with associated responses and replies: "Defendants' Traditional and No-Evidence Motion for Summary Judgment Regarding Plaintiff's Misrepresentation Claims,"[4] "Defendants' No-Evidence Motion for Summary Judgment,"[5] and "Defendants' No-Evidence Motion for Summary Judgment Regarding Alleged Violations of the Prompt Payment Statute."[6] Of these, the Court **GRANTS** the first, **DENIES** in part and **GRANTS** in part the second, and **GRANTS** the third.

---

[1] *See* APOLLODORUS, THE LIBRARY (Sir James George Frazier trans., Harvard University Press), 2.5.2 "The Second Labour," *available at* http://www.theoi.com/Text/Apollodorus1.html.
[2] *See* Annibale Carracci, *The Choice of Hercules*.
[3] *See* THE LIBRARY, 2.5.5 "The Fifth Labour."
[4] Dkt. Nos. 25 and 26. For Response, *see* Dkt. No. 27. For Reply, *see* Dkt. No. 28.
[5] Dkt. Nos. 29 and 30. For Response, *see* Dkt. No. 35. For Reply, *see* Dkt. No. 39. For Objections to the Response, *see* Dkt. No. 40.
[6] Dkt. Nos. 31 and 32. For Response, *see* Dkt. No. 37 and 38. For Reply, *see* Dkt. No. 41.

The Court will then proceed to address the "Motion to Exclude Evidence and for Sanctions,"[7] "Motion to Compel Appraisal,"[8] "Motion to Compel Deposition,"[9] "Motion for Extension of Time for Plaintiff's Designation of Experts,"[10] and "Motion for Leave to File a Plaintiff's Request to Re-Open Plaintiff Expert Deadline and Extend Expert Designation Deadline."[11] Of these, the Court **GRANTS** in part the first, **GRANTS** the second, **DENIES** the third, and **DENIES** the fourth and fifth.

In summary, the Court dismisses all claims except wrongful denial of coverage. As sanction for discovery noncooperation, the Court orders Plaintiff to compensate Defendant for costs of deposition and inspection; Defendant will notify the Court of remaining actions to be taken. The Court orders the parties to engage in appraisal and **ABATES** the case until appraisal is complete, except that the Court remains available in the event the party-appointed appraisers cannot agree on an umpire.

## I.  Background

Zev Heller ("Plaintiff") owns three properties in McAllen, Texas, located at 119 E. Shasta Avenue, 123 E. Shasta Avenue, and 125 E. Shasta Avenue ("119 Shasta," "123 Shasta," "125 Shasta").[12] On March 29, 2012, hailstorms swept across South Texas and damaged these properties.[13] On March 30, 2012, Defendant's contractor ACSI contacted Plaintiff, acknowledging receipt of his claims and assigning Steve Schultz to assess the damage. Mr. Schultz contacted Plaintiff on April 3, 2012, and met to inspect the properties on April 3 and 18,

---

[7] Dkt. No. 42. For Response, *see* Dkt. No. 46. For Reply, *see* Dkt. No. 53.
[8] Dkt. No. 43. For Response, *see* Dkt. No. 52.
[9] Dkt. No. 47. For Response, *see* Dkt. No. 55.
[10] Dkt. No. 48.
[11] Dkt. No. 49.
[12] Dkt. No. 1, Attach. 4; Dkt. No. 8, Attach. 1 at p. 8.
[13] Dkt. No. 8, Attach. 2 at p. 10.

2012.[14] Mr. Schultz filed his damage estimates for 123 and for 125 E. Shasta on April 27, 2012,[15] and his damage estimate for 119 E. Shasta on April 30, 2012.[16] Defendant notified Plaintiff that the claim for 125 E. Shasta had been accepted but fell below deductible on May 1, 2012, and paid the full amount of the estimates for 119 and 123 E. Shasta on May 10, 2012.

Alleging a raft of claims, addressed below, Plaintiff filed suit in state court in October of 2012,[17] and Defendant timely removed to this Court.[18]

## II. Summary Judgments Section

### A. Law of Summary Judgment

"Summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial."[19] In summary judgment, the Court discerns whether the situation calls for a judgment as a matter of law.[20] These situations may occur in one of three ways. First, a fact may be undisputed. A fact that is not addressed may be deemed admitted.[21] Second, a fact may not be material to the claim, such that even if it were true, it would not dispose of the matter. "Factual disputes that are irrelevant or unnecessary will not be counted."[22] Third, a fact may be so clearly established that no genuine dispute over it can exist.[23] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'."[24]

---

[14] Dkt. No. 27, Attach 11-13.
[15] Dkt. No. 27, Attach. 12 and 13.
[16] *Id.*, Attach. 11.
[17] Dkt No. 1, Attach 4. *See also* Plaintiff's Amended Complaint, Dkt. No. 24, Attach. 1.
[18] Dkt. No. 1.
[19] Crawford-El v. Britton, 523 U.S. 574, 600.
[20] FED. R. OF CIV. P. 56 and 50 present similarities, so that the non-moving party's case must be sufficient to overcome a trial or post-trial motion for judgment as a matter of law.
[21] FED R. OF CIV. P. 56(e).
[22] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248.
[23] *See, e.g.*, Scott v. Harris, 550 U.S. 372 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").
[24] Branton v. City of Dallas, 272 F.3d 730, 739 (5th Cir. 2001).

Parties may cite to any part of the record in their motions or responses.[25] Parties need not proffer evidence in a form admissible at trial,[26] but must proffer evidence substantively admissible at trial.[27] "A court considering a motion for summary judgment must consider all facts and evidence in the light most favorable to the nonmoving party."[28] In addition, a court "must disregard all evidence favorable to the moving party that the jury is not required to believe.""[29] "However, the nonmoving party may not rest on mere allegations, but must set forth specific facts indicating a genuine issue for trial."[30] "To withstand summary judgment, [the nonmoving party] must show, by affidavits, depositions, answers to interrogatories, and admissions on file, that there are specific facts that create a genuine issue for trial."[31] The Court will not ferret through the record to complete an unfinished case.[32]

## B.  Defendant's Motion for Summary Judgment on Misrepresentation Claims

The Court first sets out the elements for negligent misrepresentation in Texas. "The elements of a negligent misrepresentation claim are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the

---

[25] FED. R. OF CIV. P. 56(e), 56(c).

[26] See Celotex Corp. v. Catrett, 477 U.S. 317, 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

[27] See Bellard v. Gautreaux, 675 F.3d 454, 460 (5th Cir. 2012 ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").

[28] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

[29] Haverda v. Hays Cnty., 723 F.3d 586, 591 (5th Cir. 2013) (citations omitted).

[30] Elizondo v. Parks, 431 F. App'x 299, 302 (5th Cir. 2011).

[31] Celotex Corp. v. Catrett, 477 U.S. 317, 324.

[32] See Nicholas Acoustics & Specialty Co. v. H & M Const. Co., Inc., 695 F.2d 839, 846-47 (5th Cir. 1983) ("[P]ractical constraints on the time of a judge make it impossible for the judge to examine a record of even moderate size with such finitude as to be both exhaustive and exhausting. Judges are not ferrets!"); see also Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys., 309 F.3d 433, 436 (7th Cir. 2002) ("Judges are not like pigs, hunting for truffles buried in the record.").

representation."[33] Plaintiff alleges four main instances of misrepresentation. The Court will take each of these allegations in turn.

First, Plaintiff alleges that Defendant represented claim investigation would begin within 15 days of the claim report, but investigation on two of the properties began 19 days after the claim report.[34] The allegation exploits an ambiguity in the insurance policy language: the meaning of "begin any investigation of the claim." The Court notes that this is a claim for breach of contract, not misrepresentation. Even construing the contract in Plaintiff's favor, as a matter of law, an allegation of breach of contract does not allege misrepresentation without more.

Second, Plaintiff alleges that Defendant represented payment would arrive 5 days after notification the claim was covered, but payment did not arrive until two weeks after the inspection.[35] This claim is also for breach of contract, and the allegation ignores Plaintiff's own responsibility to supply Defendant with the signed statement of loss. Plaintiff does not dispute that after Plaintiff supplied this sworn statement,[36] Defendant paid the claim within 5 days.[37] Thus, Plaintiff has failed to raise a genuine issue of material fact.

Third, Plaintiff alleges that Mr. Schultz represented the claim would be reported "promptly," but waited two weeks to report his findings.[38] While the Court is relieved to find an actual allegation of misrepresentation, Mr. Schultz' statement that the report would be sent "promptly" does not promise any particular date. Plaintiff has failed to point to a specific misrepresentation or to show that Mr. Schultz did not use reasonable care or competence in communicating the information.

---

[33] Miller v. Raytheon Aircraft Co., 229 S.W.3d 358, 379 (Tex.App.-Houston [1st Dist.] 2007, no pet.).
[34] Dkt. No. 27 at p. 6, ¶¶1-2.
[35] Dkt. No. 27 at pp. 7-8.
[36] Dkt. No. 26, Attach 4 at p. 24; Dkt. No. 26, Attach. 5 at p. 20.
[37] Dkt. No. 26, Attach 4 at p. 25; Dkt. No. 26, Attach. 5 at p. 21.
[38] Dk.t No. 27 at pp. 6-7.

Fourth, Plaintiff alleges Mr. Schultz told him that all claims would be covered, but some of the claims were denied.[39] However, the record clearly shows that Plaintiff was aware at the time that Mr. Schultz disagreed that certain property damage should be covered,[40] so that cannot be the misrepresentation. Further, Defendant agreed to cover at least some damage on all three properties, though as a financial matter the damage on one property fell below the deductible, thus bearing out any statements Mr. Schultz may have made. Again Plaintiff has failed to point to any specific misrepresentation and thereby fails to state a claim under Texas law.

For these reasons, the motion for summary judgment regarding Plaintiff's misrepresentation claims is **GRANTED**.

### C. Defendant's No Evidence Motion for Summary Judgment Regarding Causation

In the second motion for summary judgment before the Court, Defendant alleges that Plaintiff lacks admissible evidence on the contractually-covered amount of damage done to the properties, and on his laundry list of extracontractual claims.

*Contractual Claims*

Defendant argues that because Plaintiff has failed to designate experts, Plaintiff lacks evidence entirely.[41] However, Defendant fails to cite any case showing that expert testimony is required in a hailstorm insurance case.[42] Texas law does not require expert testimony to prove causation for storm damage.[43] Expert testimony is required "when a layperson's general

---

[39] Dkt. No. 27 at p. 7, ¶16.

[40] Dkt. No. 26, Attach. 1 at pp. 15-6, Interrogatory 13.

[41] Dkt. No. 39, at p. 1, ¶1.

[42] *Geiserman v. MacDonald* will not bear the weight Defendant places upon it. *See* Geiserman v. Macdonald, 893 F.2d 787 (5th Cir. 1990). Geiserman's legal malpractice claim required expert testimony, so his failure to provide such testimony proved fatal to his case. Defendant has made no showing that storm-caused residential damage similarly requires expert testimony.

[43] U.S. Fire Ins. Co. v. Lynd Co., 399 S.W.3d 206, 218 (Tex. App. 2012), review denied (Mar. 8, 2013) (stating that which of two storms damaged apartment complexes was "an issue of causation within the common knowledge and general experience of a layperson.").

experience and common understanding would [not] enable the layperson to determine from the evidence, with reasonable probability, the causal relationship between the event and the condition."[44] "Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation."[45]

Plaintiff's own affidavit serves as such lay testimony.[46] To be admissible as summary judgment evidence, an affidavit must be based on personal knowledge, contain facts admissible in evidence, and demonstrate affiant's competence.[47] The affidavit states he was "duly sworn on her [sic] oath" and is notarized. Defendant objects that Plaintiff's affidavit contains allegations not contained in his interrogatory responses.[48] Despite Plaintiff's confused and confusing lists of damages and payments, Plaintiff has consistently alleged uncompensated roof damage, listing with specificity expenses incurred in repairing his properties.[49]

In his responses to interrogatory questions and in his affidavit, Plaintiff has alleged and supported his claim that the storm caused contractually-covered damage for which he has not received payment, thereby creating a genuine dispute of fact sufficient to overcome the motion for summary judgment. Accordingly the Court **DENIES** the motion for summary judgment as it relates to Plaintiff's claims for damage causation.

---

[44] Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 583 (Tex. 2006).
[45] Morgan v. Compugraphic Corp., 675 S.W.2d 729, 733 (Tex. 1984).
[46] Dkt. No. 35, Attach. 14.
[47] FED. R. CIV. P. 56.
[48] Dkt. No. 40, at p. 11.
[49] Dkt. No. 26, Attach. 1, Interrogatory Answers 1-4, 6, 9.

*Extracontractual Claims*

Had the contractual claim lacked all evidence, the Court would then have dismissed the extracontractual claims as well. As it is, Court will follow the winding trail of the claims as listed in Plaintiff's Response, concluding that Plaintiff lacks evidentiary support for any of them.

- *Unconscionable Acts.* Plaintiff offers as evidence of unconscionable conduct only that Defendant paid for damage inside one property without paying for damage to the roof, a course of conduct inconsistent with Defendant's actions on the other properties.[50] The Texas Deceptive Trade Practices Act defines unconscionable acts as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."[51] As a matter of law, disagreement over the extent of coverage on different properties does not, in and of itself, tend to show Defendant took advantage of Plaintiff to a grossly unfair degree. This claim is **DISMISSED**.

- *Violation of Texas Insurance Code 541.060(a)(2): Refusal to Pay Claim when Liability is Reasonably Clear.* "An insurer faces [liability under § 541.060(a)(2)(A)] if it does not attempt in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear."[52] This entails the duty "to exercise ordinary care in the settlement of claims to protect its insureds against judgments in excess of policy limits."[53] By Plaintiff's own telling, Defendant had the property inspected within 30 days, and paid the amount identified by the inspector promptly.[54] As

---

[50] Dkt. No. 35 at pp. 15-6.
[51] TEX. BUS. & COM. CODE § 17.45(5).
[52] Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 260 (Tex. 2002) (internal quotation marks and citation omitted).
[53] *Id.* ("There is nothing to indicate that the Legislature had in mind any standard other than the familiar Stowers standard."); *see* G.A. Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544 (Tex.1929).
[54] Dkt. No. 35 at pp.3-4.

a matter of law, disagreement over denial of coverage, without more, does not show bad faith. Without evidence on this score, Plaintiff's claim is **DISMISSED**.

- *Violation of Texas Insurance Code 541.060(a)(7): Refusal to Pay a Claim and to Conduct a Reasonable Investigation.* Plaintiff alleges that Defendant's representative conducted a substandard investigation.[55] Yet Plaintiff has proffered no evidence, other than his own opinion, about the standard for a reasonable insurance investigation. The business practices of the insurance industry are not within the knowledge of an ordinary juror, and require expert testimony. Accordingly, Plaintiff lacks evidence, and summary judgment is appropriate. The claim is **DISMISSED**.

- Violation of Texas Insurance Code 541.060(a)(4)(A): Failure to Affirm or Deny Coverage within a Reasonable Period of Time. The Court needs nothing other than the face of Plaintiff's Response to conclude the claim lacks a good-faith basis. Plaintiff writes, "Payment took more than 30 days . . . ACE sent Plaintiff a letter on May 2, 2012 informing Plaintiff of payment and a proof of loss form."[56] The fact that affirmation or denial of coverage differs from payment, as it clearly does, should not require a judicial determination. Payment occurring past 30 days shows nothing about affirmation or denial, which *Plaintiff* avers occurred within 30 days – well within a reasonable period of time. This claim is **DISMISSED**.

- *Violation of Texas Insurance Code 542.003(b)(3): Failure to Adopt and Implement Reasonable Standards for the Prompt Investigation of Claims.* The Court struggles to express how little evidence Plaintiff has proffered in support of this contention.[57] Sadly,

---

[55] Dkt. No. 35 at pp. 16-17.
[56] Dkt. No. 35, at p. 17, ¶ 53.
[57] Dkt. No. 35 at pp. 17-8.

amounts less than zero exist only in mathematics and theoretical physics. With no evidence, expert or otherwise, to support this accusation, the claim is **DISMISSED**.

- *Violation of Texas Insurance Code 542.003(b)(5): Compelling Policyholder to Institute a Suit by Offering Substantially Less than Amount Ultimately Recovered in the Suit.* Defendant cannot have violated this provision, because Plaintiff has not as yet recovered anything. With no "amount ultimately recovered," no amount substantially less than that amount yet exists.[58] Because Plaintiff *cannot* allege this complaint yet, the claim is **DISMISSED**.

- *Violation of Texas Insurance Code 541.060(a)(6): Undertaking to Enforce a Full and Final Release of a Claim When Only Partial Settlement Has Been Made.* Again, this claim lacks a good-faith basis on its face. Plaintiff may have "felt to believe" (sic) that he was signing a full and final release,[59] but the documents he signed do not purport to be such a release. Further, the affidavit Plaintiff cites as evidence for this contention does not breathe so much as a whisper of this belief.[60] The claim is **DISMISSED**.

- *Violation of Texas Insurance Code 541.060(a)(5): Refusing a Settlement Offer on the Basis Other Coverage May Be Available.* Again, Plaintiff fails to plead a violation of this provision. The fact that Defendant denied coverage in whole or in part for some properties has nothing to do with a refusal to honor the contract on the basis that another insurance company is already paying for the damage. The Texas Insurance Code here aims at the latter, not the former. Plaintiff alleges the former, not the latter. Plaintiff's

---

[58] To avoid confusion among the less metaphysically inclined, one may also say the Court cannot yet determine whether the amount awarded will be substantially less than the amount offered.
[59] Dkt. No. 35, at p. 19, ¶ 63.
[60] Dkt. No. 35, Attach. 14.

allegations and the plain text of the law pass each other as ships in the night.[61] This claim is **DISMISSED**.

- *Breach of Duty of Good Faith and Fair Dealing.* Texas law imposes on insurers "a common law duty to deal fairly and in good faith with its insured in the processing and payment of claims."[62] If an insurer denies a claim when the insurer knew or should have known that it was reasonably clear that the claim was covered, or fails to reasonably investigate a claim, the insurer may be liable.[63] The Court uses an objective standard based on insurers under similar circumstances to decide not whether the claim was valid, but whether the insurer acted reasonably. To recover from an insurer's breach of its duty to act in good faith, a claimant must show that an insurer's actions "produced an independent injury."[64] Because Plaintiff has shown no unreasonable actions, nor alleged an injury independent of the denial of coverage, the claim is **DISMISSED**.

The Court **DENIES** the motion for summary judgment as to the claim of breach of contract, but **GRANTS** the motion for summary judgment as to all extracontractual claims.

### D. Defendant's Motion for Summary Judgment Regarding Plaintiff's Prompt Payment Claims

As a preliminary matter, the filings docketed as responses to Defendant's motion[65] are titled "Plaintiff's, Zev Heller, Response to Defendants, ACE European Group Limited, Traditional and No-Evidence Motion for Summary Judgment, Regarding Plaintiff's

---

[61] *See* HENRY WADSWORTH LONGFELLOW, TALES OF A WAYSIDE INN  ("Only a look and a voice, then darkness again and a silence.").
[62] Aleman v. Zenith Ins. Co., 343 S.W.3d 817, 822 (Tex.App.-El Paso 2011, no pet.) (citing Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 340 (Tex.1995)).
[63] *Id.*
[64] Aranda v. Insurance Co. of North America, 748 S.W.2d 210, 214 (Tex.1988); see also United Serv. Auto. Ass'n v. Gordon, 103 S.W.3d 436, 442 (Tex.App.-San Antonio 2002, no pet.) ("An insured is not entitled to recover extra-contractual damages unless the complained of actions or omissions cause injury independent of the injury resulting from a wrongful denial of policy benefits.").
[65] Dkt. No. 32.

Misrepresentation Claims."[66] This title is identical to that of the filings which respond to the first motion for summary judgment the Court considered, and the two filings differ very little. Generously construing this ungrammatical and mistitled filing as a response to Defendant's motion, the Court nonetheless finds Plaintiff has failed to support his allegations.

Plaintiff believes paying later than 5 days from notification of coverage constitutes a prompt payment violation. Even if Defendant breached the contract by failing to pay within 5 days of Mr. Schultz's visit, that breach would not violate the Texas Insurance Code. The Texas Insurance Code § 542.057 provides that an insurer must pay a claim within 20 days after giving notice the claim has been accepted. Plaintiff's own misreading of the Code in his amended petition gave Defendant 60 days from receipt of all required paperwork to make payment.[67] Plaintiff has never alleged that Defendant came anywhere near these deadlines; the claim lacks a good-faith basis. The Court **GRANTS** this motion for summary judgment and **DISMISSES** Plaintiff's prompt payment claim.

### III. Motions Relating to Evidence and Appraisal

#### A. Defendant's Motion to Exclude Evidence and For Sanctions

Defendant asks the Court to exclude evidence and to impose sanctions on Plaintiff in response to six different violations of Court orders[68]: (1) failure to supply Rule 26 disclosures; (2) failure to provide other Court-ordered information; (3) failure to reply fully to Interrogatories; (4) failure to designate experts; (5) failure to provide Plaintiff himself for deposition; and (6) failure to provide the property in question for inspection. Defendant asks the Court to strike Plaintiff's complaint, or to order Plaintiff to allow deposition and inspection and pay Defendant's expenses. The Court has already addressed the first three violations on May 22

---

[66] Dkt. Nos. 37 and 38. *Cf.* Dkt. No. 10.
[67] Dkt. No. 24, Attach. 1 at p. 11.
[68] Dkt. No. 42.

and June 3 of 2013 by sanctioning Plaintiff twice.[69] Plaintiff's failure to designate experts does not warrant sanctions, as it carries its own punishment with it. This leaves the Court with the alleged failures to cooperate with deposition and inspection.

The record does show a remarkable lack of response from Plaintiff. On July 19 and 29, Defendant requested dates to inspect the properties, referencing a prior oral request.[70] Still without response from Plaintiff, Defendant moved for a three-week extension of time to designate experts.[71] The Court granted this motion on July 31.[72] In a truly odd tactic, Plaintiff emailed Defendant on August 1 to give notice that Plaintiff had conducted, alone, a binding appraisal pursuant to the appraisal clause.[73] Plaintiff then emailed Defendant on August 5, offering the property for inspection on August 12. Defendant declined in two separate letters, asking for an inspection date during the week of August 19.[74] Thus, the record supports Defendant's assertion that Plaintiff has ignored repeated discovery requests, only offering the property for inspection one time, for one day. A similar pattern holds for Defendant's requests to depose Plaintiff.[75]

According to Rule 37(a)(3)(B)(iv), a party may move to compel discovery if the opposing party fails to respond that inspection will be permitted. If the Court issues an order and the delinquent party still fails to comply, then sanctions are appropriate. Under Rule 37, Defendant's first response should have been to file a motion to compel discovery. This, Defendant did not do. The Court will not exercise the extreme remedy of dismissing Plaintiff's claims. Noting that the

---

[69] Dkt. Nos. 17 and 22.
[70] Dkt. No. 42, Attach. 5 and Attach. 6.
[71] Dkt. No. 33.
[72] Dkt. No. 34.
[73] Dkt. No. 42, Attach. 7.
[74] Dkt. No. 53, Attach. 3.
[75] Dkt. No. 42, Attach. 4, 9, 10, 11.

parties may have completed deposition and inspection,[76] the Court **GRANTS** this motion in the following manner: Defendant must update the Court on the status of the deposition and inspection; Plaintiff must compensate Defendant for these costs; and Defendant's deadline to designate experts and conclude discovery is extended until January 15, 2014. Should Defendant require more time, he should petition the Court no later than 10 days prior to that date.

### B. Plaintiff's Motion to Compel Appraisal

Plaintiff now invokes the contract's appraisal clause.[77] "An appraisal clause 'binds the parties to have the extent or amount of the loss determined in a particular way.' Like any other contractual provision, appraisal clauses should be enforced . . . without preemptive intervention by the courts."[78]

Defendant responds that Plaintiff has waived, by word and conduct, his right to appraisal. Though waiver is ordinarily a question of fact, where the facts are clearly established, as they are here, waiver becomes a question of law.[79] Waiver is an affirmative defense and may be shown in either of two ways: either by evincing an intention not to engage in appraisal, or by sitting on that right unreasonably to the prejudice of the opposing party.

To show intent to abandon the right to appraisal, Defendant first relies on a conversation between counsels on December 18, 2012, during which Mr. Saenz indicated he did not intend to seek appraisal.[80] Given that Mr. Saenz claims to have thought of this conversation as a sort of preliminary negotiation,[81] this conversation does not evince an objective intent to waive appraisal; that is, it does not provide evidence readily available to a third party. Next, Defendant

---

[76] Dkt. No. 53, Attach. 2, 4.
[77] Dkt. No. 43.
[78] State Farm Lloyds v. Johnson, 290 S.W.3d 886, 895 (Tex. 2009).
[79] *See* Tenneco Inc. v. Enter. Products Co., 925 S.W.2d 640, 643 (Tex. 1996).
[80] Dkt. No. 52 at pp. 3-4.
[81] Dkt. No. 52, Attach. 5 at pp. 1-2.

argues that Plaintiff has performed intentional conduct inconsistent with the right to appraisal. Rather than requesting appraisal during the alternative scheduling, Plaintiff instead engaged in protracted discovery aimed at claims which could not be resolved through appraisal.[82] However, the Court did not explicitly state that failure to invoke appraisal during the alternative scheduling order would result in waiver; and discovery does not constitute conduct inconsistent with appraisal, because appraisal can resolve only one of the many issues involved in the lawsuit.[83]

Defendant also claims prejudice due to Plaintiff's dilatory enforcement of the appraisal clause. Texas courts have found waiver where a party sits on its right for an unreasonable time[84] and thereby causes prejudice to the other party.[85] However, as *Underwriters* points out, Defendant could have avoided any putative prejudice by demanding appraisal, but did not.

While Texas courts encourage appraisal as an alternative to litigation as a matter of public policy, and resorting to appraisal after a year of litigation certainly flouts this policy, appraisal can still avoid some litigation in this case. The Court therefore **GRANTS** the motion to compel appraisal, and orders both parties to conduct appraisal by January 30, 2014.

### C. Plaintiff's Motion to Compel Deposition

The Court must determine whether Defendant's alleged failure to provide Mr. Schultz for deposition excuses Plaintiff's neglect in completing discovery.[86] Plaintiff requested a deposition within three weeks on May 30, 2013; nearly a month later, Defendant responded, offering some

---

[82] *Id.* at p. 1.
[83] Lundstrom v. United Servs. Auto. Ass'n–CIC, 192 S.W.3d 78, 87 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court.").
[84] In re Slavonic Mut. Fire Ins. Ass'n, 308 S.W.3d 556, 562 (Tex. App. 2010) ("[S]ilence or inaction for an unreasonable period of time may show an intention to yield a known right . . . the date of disagreement, or impasse, is the point of reference to determine whether a demand for an appraisal is made within a reasonable time.").
[85] In re Universal Underwriters of Texas Ins. Co., 345 S.W.3d 404, 411 (Tex. 2011) ("[M]ere delay is not enough to find waiver; a party must show that it has been prejudiced . . . If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself.").
[86] Dkt. No. 47. Because this motion was made after the deadline, the Court applies the "excusable neglect" standard rather than the "good cause" standard. FED. R. CIV. P. 6(b)(1)(B).

time in "early August."[87] Plaintiff did not then reply until the end of the deposition period, 71 days later.[88] A diligent pursuit of discovery – even one where counsels proved unable to agree on a deposition time – would have shown Plaintiff before the deadline whether to seek Court assistance. The bare record before the Court reflects Plaintiff's unexcused neglect, not Defendant's "refusal" to provide Mr. Schultz for deposition. The motion is therefore **DENIED**.

> ### D. Motion for Extension of Time for Plaintiff's Designation of Experts, and Motion for Leave to File Plaintiff's Request to Re-Open Plaintiff Expert Deadline and Extend Expert Designation Deadline

Plaintiff's next two motions request an extension of time to remedy Plaintiff's failure to designate experts timely.[89] The second motion adds irrelevant exhibits, but no new reason to extend time to designate experts. Defendant asks the Court to strike the motion for failure to comply with Local Rule 7.1D, but the motion does in fact contain an averment that the movant has conferred with the respondent. Defendant does not show that Plaintiff has not complied with the Rule; Defendant presents evidence that the averment is false, raising concerns that Plaintiff's counsel may have violated Rule 11 of the Federal Rules of Civil Procedure.

Moving to the substance of the motions, Plaintiff makes no attempt to justify his failure to comply with the deadline. Unjustified neglect cannot be excused. The Court therefore **DENIES** both motions.

### IV. Holding

In sum, the Court dismisses all claims except wrongful denial of coverage. As sanction for discovery noncooperation, the Court orders Plaintiff to compensate Defendant for costs of deposition and inspection; Defendant will notify the Court of remaining actions to be taken. The Court orders the parties to engage in appraisal and **ABATES** the case until appraisal is complete,

---

[87] Dkt. No. 47, Attach. 3.
[88] Dkt. No. 47, Attach. 4.
[89] Dkts. No. 48, 49. Just as above, the Court applies the excusable neglect standard.

except that the Court remains available in the event the party-appointed appraisers cannot agree

on an umpire.


IT IS SO ORDERED.

DONE this 16th day of December, 2013, in McAllen, Texas.


_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE